**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
|                                    | : |
| MTESA RAMSEY,                      | :  CIVIL ACTION |
|                                    | : |
|                    Plaintiff,      | :  Case No.: 12-CV-00466 |
|                                    | : |
| v.                                 | : |
|                                    | :  _Document Filed Electronically_ |
| WELLS FARGO BANK, N.A.             | : |
|                                    | : |
|                    Defendant.      | : |
_____ :

## <u>ORDER</u>

AND NOW, this ___ day of _____, 2012, upon consideration of the

Motion of Defendant Wells Fargo Bank, N.A. for Summary Judgment and Plaintiff's response

thereto, if any, it is hereby ORDERED that Defendant's motion is GRANTED and JUDGMENT

IS ENTERED in favor of  Wells Fargo Bank, N.A. and against Plaintiff on all claims in the

Complaint.

BY THE COURT:

_____
Robreno, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                          :
MTESA RAMSEY,                             :    CIVIL ACTION
                                          :
                    Plaintiff,            :    Case No.: 12-CV-00466
                                          :
v.                                        :
                                          :    _Document Filed Electronically_
                                          :
WELLS FARGO BANK, N.A.                    :
                                          :
                    Defendant.            :
_____         :

## MOTION OF DEFENDANT WELLS FARGO BANK, N.A.
## FOR SUMMARY JUDGMENT

Defendant Wells Fargo Bank, N.A., by and through its undersigned attorneys, hereby moves this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In support of its Motion, Defendant relies upon the arguments set forth in the attached memorandum of law.

Respectfully Submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PC.

/s/ _Julie A. Donahue_
Paul Lancaster Adams (I.D. No. 72222)
Julie A. Donahue (I.D. No. 203347)
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2800
Attorneys for Defendant
Wells Fargo Bank, N.A.

Date: September 14, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MTESA RAMSEY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | Case No.: 12-CV-00466 |
| | : | |
| v. | : | |
| | : | *Document Filed Electronically* |
| WELLS FARGO BANK, N.A. | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGEMENT**

## I.     INTRODUCTION

Plaintiff, Mtesa Ramsey, a former employee of Wells Fargo Bank, was terminated from employment with Wells Fargo after he received multiple disciplinary actions regarding his inappropriate workplace conduct.  Despite being placed on notice that his behavior was unacceptable, Plaintiff continued to exhibit the same insubordinate and inappropriate conduct. Because Plaintiff refused to correct his inappropriate conduct, Wells Fargo had no choice but to terminate his employment.  Rather than taking responsibility for his actions, Plaintiff attempts to deflect blame by asserting that Wells Fargo violated Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act by discriminating against him based on religion and retaliated against him for requesting a religious accommodation.  However, Plaintiff has no evidence to establish that Wells Fargo had any discriminatory or retaliatory motive when it terminated his employment.  Therefore, Plaintiff cannot meet his burden on his claims. Accordingly, Wells Fargo respectfully submits that it is entitled to judgment in its favor dismissing Plaintiff's Complaint with prejudice.

## II.     STATEMENT OF FACTS[1]

Plaintiff began employment at Wells Fargo as a Personal Banker at the Center Square location in June 2009.  First Am. Compl. at ¶ 11, attached hereto as Exhibit A.  Plaintiff is a Baptist.  First Am. Compl., Ex. A at ¶ 10.  As a Personal Banker, Plaintiff's duties included opening various customer accounts including checking, savings accounts and debit accounts, money market accounts, Certificates of Deposit as well as maintaining customer accounts and referring customers to a financial consultant.   July 24, 2012 Deposition of Plaintiff Mtesa Ramsey ("Pl.'s Dep."), attached hereto as Exhibit B at 64:15-19; 64:23-24.[2]  While Plaintiff worked at Wells Fargo's Center Square location, he reported to a number of different managers, including Dave Bolger, Fred Gardner, Steve Lowrey, and Denisha Perez.  Pl.'s Dep., Ex. B at 284:18-21, 285:16-19, 287:18-13.

Wells Fargo has a company-wide policy prohibiting unlawful discrimination of any kind, including unlawful harassment and retaliation.  Declaration of Lorie Junnila ("Junnila Decl."), attached hereto as Exhibit C at ¶ 4.  Wells Fargo's managers are required to complete an annual training certification in various areas, including anti-discrimination and anti-harassment and applicable Wells Fargo policies and procedures.  Junnila Decl., Ex. C at ¶ 5.

## A.     Plaintiff's Disciplinary History

On July 28, 2010, Plaintiff received a formal warning from his then-manager, Denisha Perez, for providing an unsatisfactory customer experience.  Pl.'s Dep, Ex. B at 187:5-13; see

---

[1] Defendant submits that the facts set forth herein in support of Defendant's Motion for Summary Judgment are submitted based on the existing record for purposes of summary judgment only, in order to assert the absence of a genuine issue of material fact.  The material facts set forth in this Statement of Facts are not admissions by Defendant that the facts are accurate, and Defendant respectfully reserves the right to contest the accuracy of the material facts set forth in this Statement at the trial of this matter.

Ex. B-9.  The warning arose from an incident on July 21, 2010, where in the middle of the appointment with the customer, Plaintiff requested that the customer reschedule because Ms. Perez stepped in to observe the appointment.  Ex. B-9.  The warning noted that coaching Plaintiff was part of Ms. Perez' duties and that "going forward Denisha will be able to coach during appointments, calling times, and customer interaction."  Ex. B-9.

In August 2010, Plaintiff transferred to Wells Fargo's Richland Mall store and reported to Store Manager, Denise DeStefanis.  Denise DeStefanis was the store manager of the Richland Mall location for approximately five years.  August 9, 2012 Deposition of Denise DeStefanis ("DeStefanis Dep."), attached here to as Exhibit D at 10:16-19. [3]   Ms. DeStefanis was responsible for supervising the personal bankers in the Richland Mall store. DeStefanis Dep., Ex. D at 14:1-4.  Ms. DeStefanis was also responsible for hiring, firing and disciplining employees at the Richland Mall store.  DeStefanis Dep., Ex. D at 22:5-22.

On January 5, 2011, Plaintiff met with Ms. DeStefanis and the District Manager, Marla Walczak, to discuss Wells Fargo's expectations of Plaintiff's conduct, including that Plaintiff would proactively participate in team meetings, would participate in Wednesday night call nights; and would adhere to the agreement for communication.  DeStefanis Dep., Ex. D at 38:3-7, Ex. D-1.   Subsequently, Plaintiff demonstrated improper workplace behavior on several occasions.  DeStefanis Dep., Ex. D at 45:1-8; see Ex. D-3.  First, Plaintiff exhibited improper conduct during a team meeting on January 13, 2011, where Ms. DeStefanis was reviewing some information when he muttered under his breath that the meeting was a "waste of time."  See Ex.

---

[2] Excerpts to Plaintiff's Deposition are attached hereto as Exhibit B.  Exhibits to Plaintiff's Deposition are attached to Ex. B, numbered in accordance with the numbers assigned at Plaintiff's Deposition.  (For example, the document marked Ramsey-1 at Plaintiff's Deposition will be referred to as Ex. B-1 herein.)
[3] Excerpts to Denise DeStefanis' Deposition are attached hereto as Exhibit D.  Exhibits to Ms. DeStefanis' Deposition are attached to Ex. D, numbered in accordance with the numbers assigned at Plaintiff's Deposition.  (For example, the document marked DeStefanis-1 at DeStefanis' Deposition will be referred to as Ex. D-1 herein.)

D-3.   Furthermore, Ms. DeStefanis noted that Plaintiff "talked over her," "argued" with her and "interrupted" her during a coaching session and left Ms. DeStefanis' office before she was finished with the coaching session refusing to discuss it further.  See Ex. D-3.  After discussing Plaintiff's improper conduct with Ms. Walczak, Ms. DeStefanis, on January 18, 2011, issued Plaintiff a Final Notice for inappropriate workplace behavior.  Pl.'s Dep., Ex. B at 204:13-19; DeStefanis Dep., Ex. D at 46:19-20; see Ex. D-3.  Ms. DeStefanis reviewed the Final Notice with Plaintiff and he refused to sign it.  Ex. D at 46:20-22; 47:1-2.

In May 2011, Phil Sergi became Store Manager of the Richland Mall store upon Ms. DeStefanis' retirement.[4]   August 10, 2012 Deposition of Phil Sergi ("Sergi Dep."), attached hereto as Exhibit E at 9:3-5.[5]   As Store Manager, Mr. Sergi was responsible for overseeing platform employees and for the day to day operations of the store, including sales, service and operations.  Sergi Dep., Ex. E at 14:23-24;15:1-3.  After only a week as Store Manager, Mr. Sergi received several complaints from customers about Plaintiff's level of service.  Ex. E at 90:4-22; see also Ex. D-4.[6]   In particular, a customer and his daughter closed their accounts because of the poor service Plaintiff provided.  Ex. D-4.  The same customer told Ms. DeStefanis that he did not want Plaintiff to wait on him anymore.  DeStefanis Dep., Ex. D at 50:11-12.  Additionally, a second customer had written to a manager of another Wells Fargo store to complain of Plaintiff's treatment of her.  Ex. D-5.  Mr. Sergi discussed with Randy Prymock, Human Resources Business Partner, what corrective action should be issued in response to the customer complaints about Plaintiff on May 25, 2011.  August 10, 2012 Deposition of Randy

---

[4] From mid May 2011 until the end of May 2011, both Ms. DeStefanis and Mr. Sergi worked at the Richland Mall store as the Store Managers.  Sergi Dep., Ex. E at 11:5-18.
[5] Excerpts to Phil Sergi's Deposition are attached hereto as Exhibit E.  Exhibits to Mr. Sergi's Deposition are attached to Ex. E, numbered in accordance with the numbers assigned at Mr. Sergi's Deposition.  (For example, the document marked Sergi-1 at Mr. Sergi's Deposition will be referred to as Ex. E-1 herein.)

Prymock ("Prymock Dep."), Exhibit F at 33:24; 34:1-2, 7-11. [7]   On June 3, 2011, as a result of these two incidents, Mr. Sergi placed Plaintiff on an Informal Warning for failing provide customer service.  Ex. D-4.

**B.      Wednesday Night Call Nights**

When he took over as Store Manager of Richland Mall, Mr. Sergi wanted to extend the time for call nights[8] from 6pm until 7pm because it provided a more effective time to reach customers, especially those who are just arriving home from work.  Sergi Dep., Ex. E at 48:3-5. On Wednesday, June 1, 2011, Plaintiff and Mr. Sergi worked together for the first time on a Wednesday.  Pl.'s Dep., Ex. B at 297:19-21.  When Plaintiff started to leave the store at 6pm, Mr. Sergi asked him where he was going.  Pl.'s Dep., Ex. B at 298:13.  Plaintiff responded that he always left at this time.  Pl.'s Dep., Ex. B at 298:14-16.  Mr. Sergi expressed that he planned to initiate having call nights until 7pm on Wednesdays.  Pl.'s Dep., Ex. B at 298:16-21. However, Plaintiff stated that he would not work Wednesdays because he had unspecified "obligations."  Pl.'s Dep., Ex. B at 298:14-15.

On the morning of June 2, 2011, Mr. Sergi called a meeting at the Richland Mall store and announced that the store would hold weekly call nights on Wednesdays until 7pm.  Pl.'s Dep., Ex. B at 301:21-24.  Plaintiff again told Mr. Sergi, without explanation as to his reason, that he refused to work after 6pm on Wednesdays.  Pl.'s Dep., Ex. B at 303:13-17; Sergi Dep., Ex. E at 49:15-24; 50:3-4.  Mr. Sergi described Plaintiff's demeanor during the conversation as aggressive and very demonstrative.  Sergi Dep., Ex. E at 109:3-6.  Plaintiff was adamant that he

---

[6] At Mr. Sergi's deposition, he authenticated and testified regarding some documents that had been marked during Ms. DeStefanis' deposition.  Therefore, Wells Fargo cites to the exhibits from Ms. DeStefanis' deposition where appropriate.

[7] Excerpts to Randy Prymock's Deposition are attached hereto as Exhibit E.  Exhibits to Mr. Prymock's Deposition are attached to Ex. F, numbered in accordance with the numbers assigned at Mr. Prymock's Deposition.  (For example, the document marked Prymock-1 at Mr. Prymock's Deposition will be referred to as Ex. E-1 herein.)

would not work Wednesdays but would not give Mr. Sergi a reason or explanation.  Id.  Mr. Sergi believed Plaintiff's unexplained refusal on June 2, 2011 to work on Wednesday nights warranted termination.  Sergi Dep., Ex. E at 60:10-13; 60: 14-17.

In the evening on June 2, 2011, Plaintiff contacted Wells Fargo's Human Resources Advisor line and requested that he not be required to work after 6pm on Wednesday and Monday nights as a religious accommodation.  Pl.'s Dep., Ex. B at 304:21-23, 305:1-4.  Through the HR Advisor line, Plaintiff spoke with Employee Relations Consultant, Lorie Junnila.  August 7, 2012 Deposition of Lorie Junnila ("Junnila Dep."), Exhibit G, at 29:13-21; see Ex. G-6. [9]  Plaintiff called Ms. Junnila to "see if he had to attend call nights because he went to church on Wednesdays and call night was interfering with church services for him."  Junnila Dep., Ex. G at 30:18-21; see Ex. G-6.  In the evening of June 3, 2011, Ms. Junnila contacted Plaintiff to inform Plaintiff that his request "was a very reasonable and easy accommodation to make."  Junnila Dep., Ex. G at 33:17-20.  She also reiterated that Plaintiff's manager might ask him to stay for call nights on another night of the week.  Junnila Dep., Ex. G at 33:20-23.

On June 4, 2011, Mr. Sergi emailed Mr. Prymock regarding Plaintiff's unexplained refusal to work Wednesday call nights.  Prymock Dep., Ex. F at 45:2-4; Sergi Dep., Ex. E at 55:10-12; see Ex. E-2.  Mr. Prymock reviewed Wells Fargo's human resources case studies and learned that Plaintiff had spoken with Ms. Junnila and requested a religious accommodation.  Prymock Dep., Ex. F at 30:3-7.  Mr. Prymock and Ms. Junnila spoke on June 8, 2011.  Junnila Dep., Ex. G at 49:13-20.  Ms. Junnila informed Mr. Prymock that Plaintiff had requested a religious accommodation and that Wells Fargo had granted the accommodation that Plaintiff

---

[8] Call nights are designated nights where the platform staff, including Personal Bankers, remain at work after closing to conduct sales calls on Wells Fargo customers.

would not be required to work call nights on Wednesday nights.  Prymock Dep., Ex. F at 30:19-23.  Ms. Junnila told Mr. Prymock that she did not contact Mr. Sergi regarding the accommodation because Plaintiff indicated that he would inform his manager.  Prymock Dep., Ex. F at 31:1-3.

Mr. Prymock did not inform Mr. Sergi about Plaintiff's request for accommodation because he believed at that point that Plaintiff had a responsibility to speak with Mr. Sergi and because Mr. Prymock did not have Plaintiff's permission to talk to Mr. Sergi about Plaintiff's request.  Prymock Dep., Ex. F at 32:20-24; 33:1-5.

On June 9, 2011, Mr. Sergi and Plaintiff discussed the schedule for call nights and Plaintiff stated he could not work after 6pm on Wednesdays due to religious reasons.  Sergi Dep., Ex. E at 59:2-6.  After learning about Plaintiff's religious accommodation, Mr. Sergi readily agreed that Tuesday night will be the designated call night.  Sergi Dep., Ex. E at 48:6-11.  Mr. Sergi believed the issue with call nights "had been resolved."  Sergi Dep., Ex. E at 84:7-8.

C.     **The Events of June 10, 2011**

On June 10, 2011, Mr. Sergi was unable to find Plaintiff at his desk but located him in an unused office.  Prymock Dep., Ex. F at 36:17-24; 37:1-2.  When Mr. Sergi asked Plaintiff what he was doing, Plaintiff refused to respond.  Prymock Dep., Ex. F at 36:17-24; 37:1-2.  Plaintiff eventually told Mr. Sergi that he is writing an email to Human Resources.  Prymock Dep., Ex. F at 36:17-24; 37:1-2.  Also on June 10, 2011, Plaintiff appeared to be on a personal phone call.  Sergi Dep., Ex. E at 83:4-9.  Mr. Sergi asked Plaintiff to whom he is speaking and Plaintiff responded, "none of your business."  Sergi Dep., Ex. E at 83: 4-10; <u>see</u> E-6.  Plaintiff eventually told Mr. Sergi that he was calling Human Resources.  Sergi Dep., Ex. E at 83:19-21.  Mr. Sergi

---

[9] Excerpts to Lorie Junnila's Deposition are attached hereto as Exhibit G.  Exhibits to Ms. Junnila's Deposition are attached to Ex. G, numbered in accordance with the numbers assigned at Ms. Junnila's Deposition.  (For example,

felt that Plaintiff was demonstrative and aggressive during this interaction.   Additionally, Plaintiff's disrespectful conduct towards Mr. Sergi occurred in front of other employees, undermining Mr. Sergi's authority as Store Manager.  Sergi Dep., Ex. E at 111:13-16, 112:1-6.

That same day Plaintiff called Ms. Junnila and claimed that Mr. Sergi was harassing him in that Mr. Sergi was "bothering him about the way he was dressed, leaving the workplace and not clocking out."  Junnila Dep., Ex. G at 35:6-10.  Plaintiff also emailed Ms. Junnila regarding Mr. Sergi's conduct. Pl.'s Dep., Ex. B at 345:21-24; 346:1-8;  See Ex. B-17.   Mr. Sergi also contacted Human Resources on June 10th, calling Mr. Prymock to inform him of Plaintiff's insubordinate behavior.  Sergi Dep., Ex. E at 112:8-15.  Mr. Sergi told Mr. Prymock that he had asked Plaintiff what he was doing and that Plaintiff responded, "none of your business."  Sergi Dep., Ex. E at 111:4-7.  Mr. Sergi believed that such conduct constituted insubordination.  Mr. Prymock agreed that Plaintiff's behavior was insubordinate.  Prymock Dep., Ex. F at 37: 6-9.

Mr. Prymock then discussed the situation with Ms. Walczak. August 29, 2012 Deposition of Marla Walczak ("Walczak Dep."), attached hereto as Exhibit H at 33:21-23.[10]  Since Plaintiff had multiple corrective actions and was on a Final Notice due to his behavior, Mr. Prymock and Ms. Walczak determined Plaintiff's conduct violated the Final Notice and warranted termination. Prymock Dep., Ex. F at 38:1-6.  Ms. Walczak also reviewed the decision to terminate Plaintiff's employment with Senior Human Resources Business Partner, Mr. Billy Mosley.  Walczak Dep., Ex. H at 42:22-24.  She informed Mr. Mosley of Plaintiff's disciplinary history and Plaintiff's insubordinate conduct in June 2011. August 10, 2012 Deposition of Billy Mosley ("Mosley Dep."), attached hereto as Exhibit I at 21:9-18.[11]  Mr. Mosley supported the decision to terminate

---

the document marked Junnila-1 at her Deposition will be referred to as Ex. G-1 herein.)
[10] Excerpts to Marla Walczak's Deposition are attached hereto as Exhibit H.
[11] Excerpts to Billy Mosley's Deposition are attached hereto as Exhibit I.

Plaintiff's employment.  Mosley Dep., Ex. I at 27:18-21.  Plaintiff's employment was terminated on June 17, 2011 for violating Wells Fargo's Workplace Conduct Policy.  See Ex. B-15.

### III.    ARGUMENT

#### A.    Standard for Summary Judgment

Summary judgment should be granted where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, when viewed with all reasonable inferences drawn in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A "genuine" issue of material fact is one which might actually change the outcome of the proceeding.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of showing that it is entitled to summary judgment.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), cert. denied, 484 U.S. 1066 (1988)).  Although the court must give the non-moving party the benefit of all reasonable inferences, the non-moving party cannot rely solely on unsupported assertions or conclusory allegations.  Celotex, 477 U.S. at 323-24.

The non-moving party must point to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial.  Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quotation omitted).  Such evidence "must be more than the non-moving party's bald assertions."  Bailey v. Reading Hous. Auth., No. Civ. A. 04-2532, 2005 WL 1006265, at *1 (E.D. Pa. Apr. 29, 2005), aff'd, 187 Fed. Appx. 148 (3d Cir. 2006).  Indeed, "[a] Motion for Summary Judgment will not be denied because of the mere existence of some evidence in support of the nonmoving party.  The nonmoving party must present sufficient evidence for a jury to reasonably find for them on that issue."  Langley v. Merck & Co., Inc., No. Civ. A. 04-

3796, 2005 WL 1279108, at *1 (E.D. Pa. May 25, 2005), aff'd, 186 Fed. Appx. 258 (3d Cir. 2006).

**B.   Plaintiff Has No Evidence To Show That Wells Fargo Discriminated Against Him Based on His Religion.**

**1.   Legal Standard**

Generally, a plaintiff alleging employment discrimination can prove his or her claim either through direct or circumstantial evidence.  Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2154 (2003).  Here, Plaintiff can produce no direct evidence of religious discrimination.  That is, Plaintiff cannot point to any "conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting discriminatory attitude."  King v. School Dist. of Phila., No. 00-CV-2503, 2001 WL 856948, at *3 (E.D. Pa. Jul. 26, 2001) (quoting Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1096 (3d Cir. 1995)) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 244 (1989)).

Thus, Plaintiff must prove his claim by circumstantial evidence, and the Court must evaluate his claim in accordance with the burden shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972), and its progeny.  Under that now familiar standard:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination.  Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for [its actions].  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981).

The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  St. Mary's Honor

Center v. Hicks, 509 U.S. 502, 506-07 (1993).  Thus, to survive summary judgment once the employer has articulated a non-discriminatory reason for its actions, a plaintiff must provide evidence "from which a factfinder could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  See Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).  To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is "wise, shrewd, prudent, or competent."  Williams v. Shenango, Inc., 986 F. Supp. 309, 322 (W.D. Pa. 1997) (citing Fuentes, 32 F.3d at 765)).  Notwithstanding the burden-shifting framework, the plaintiff always bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799 n.10 (3d Cir. 2003).

Where, as here, a plaintiff cannot prove discriminatory motive, Plaintiff's claim must fail. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

> **2.     Plaintiff Cannot Prove a *Prima Facie* Case of Religious Discrimination Because There Are No Circumstances Giving Rise to an Inference of Discrimination.**

Plaintiff alleged that Wells Fargo discriminated against him on the basis of religion in that he was terminated from employment because of his religion.

To establish a prima facie case of religious-based discrimination, Plaintiff must show that 1) he is a member of a protected class; 2) he was qualified for the position he sought; 3) he suffered an adverse employment action; and 4) nonmembers of the protected class were treated more favorably or the action was taken under circumstances that give rise to an inference of discrimination.  Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 281-82 (3d

Cir. 2001) (Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-319 (3d Cir. 2000) (internal citations omitted)).[12]  A plaintiff must present evidence that "establish[es] some *causal nexus* between his membership in a protected class" and the adverse employment decision. Sarullo, 352 F.3d at 798 (emphasis added).  Wells Fargo does not dispute that that Plaintiff is a member of a protected class, in that he is a Baptist, or that he has suffered an adverse employment action.  However, Plaintiff cannot establish a *prima facie* case of religious discrimination because he cannot show that nonmembers of the protected class were treated more favorably or that any adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination based on his religion.  As an initial matter, Plaintiff cannot show, and has not alleged, that any similarly situated non-Baptist employee was treated more favorably or that Plaintiff was subjected to any derogatory or offensive comments or actions regarding his religion.

Additionally, there is no evidence to suggest an inference of discrimination because the record reflects that during his employment, Plaintiff displayed a pattern of inappropriate and insubordinate conduct towards his managers.  The undisputed facts establish the following:

- On July 28, 2010, Ms. Denisha Perez issued Plaintiff a Formal Warning after he refused to allow Ms. Perez to observe and provide coaching regarding Plaintiff's interaction with a customer.  Ex. B-9.

- On January 18, 2011, Ms. Denise DeStefanis issued Plaintiff a Final Notice after Plaintiff demonstrated multiple instances of inappropriate behavior,

---

[12] Discrimination claims under both Title VII and the PHRA are analyzed under the familiar three-step framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Atkinson v. LaFayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)).

14

including Plaintiff arguing and interrupting Ms. DeStefanis while she provided Plaintiff with coaching on his behavior.  Ex. D-3.

- On June 1, 2011, Plaintiff refused to work until 7pm on Wednesdays because he had unspecified "obligations."  Pl.'s Dep., Ex. B at 297:19-21

- On June 2, 2011, Plaintiff again refused, without explanation, to work until 7pm on Wednesday nights.  Pl.'s Dep., Ex. B at 303:13-17.

- On June 10, 2011, Plaintiff refused to tell Mr. Sergi what he was doing after Mr. Sergi asked him if he was working on sales-related activity.  See Ex. B-17.

Plaintiff's own deposition testimony confirms that he responded to Mr. Sergi's direction to work until 7pm on Wednesday nights with an unexplained, insubordinate refusal.  Pl.'s Dep., Ex. B at 298:13-21.  Similarly, Plaintiff, in his own words, admitted that Mr. Sergi asked him, during work hours, if he was working on something sales related and that Plaintiff did not answer the question.  See Ex. B-17.  Plaintiff also admitted that he responded that he was writing an email to human resources only after Mr. Sergi pressed for an answer as to what Plaintiff was doing.  Id.  Plaintiff appears to believe that his behavior was acceptable.  Significantly, Mr. Sergi's observations and criticisms of Plaintiff's behavior are wholly consistent with the observations and criticisms of Plaintiff's inappropriate workplace conduct that Plaintiff's prior managers, Denisha Perez and Denise DeStefanis, found unacceptable.  See Ex. B-9; Ex. D-3.  Additionally, Mr. Prymock and Ms. Walczak agreed that Plaintiff's conduct was insubordinate and warranted termination.  Prymock Dep., Ex. F at 38: 1-6.

Plaintiff seems to believe that because he eventually told Mr. Sergi of his religious needs and eventually told Mr. Sergi that he was communicating with Human Resources, that Mr. Sergi

had no basis on which to conclude that Plaintiff's earlier behavior was insubordinate and deserving of corrective action.  Even accepting Plaintiff's claim that he informed Mr. Sergi of his religious obligations on June 3, 2011 as true (Pl.'s Dep., Ex. B at 377:11-24; 378:1-9), which Wells Fargo disputes, such disclosure did not serve to cure Plaintiff's earlier unexplained refusal to work after directed to do so by his supervisor.  Likewise, Plaintiff cannot immunize himself from discipline for his disrespectful and insubordinate response to Mr. Sergi on June 10th by later stating that he was contacting Human Resources

To the extent Plaintiff relies on his request for a religious accommodation as support for his bald assertion that he was terminated because of his religion, such reliance is plainly insufficient.  Importantly, Plaintiff's religious accommodation was granted.  Plaintiff further admits that Mr. Sergi never held call nights until 7pm on Wednesdays and therefore Plaintiff never missed a religious based event.  Pl.'s Dep., Ex. B at Dep. 320: 2-4.  In fact, upon learning of Plaintiff's religious obligations, Mr. Sergi promptly rescheduled call nights for Tuesday nights.  Sergi Dep., Ex. E at 108:2-12.  Moreover, the Tuesday night schedule remains in place to the present day (Sergi's Dep., Ex. E at 108:13-18), which belies Plaintiff's assertion that Mr. Sergi was upset that call nights would not be held on Wednesdays.

Plaintiff has adduced no evidence, other than his own subjective belief, to support his claim of religious discrimination.  See Brown v. Boeing Co., 468 F. Supp. 2d 729, 737 (E.D. Pa. 2007) (Robreno, J.) (granting summary judgment and finding that plaintiff had no evidence other than her own beliefs that she was being discriminated against);  Bailey v. Principi, No. 02-942, 2003 WL 22245110, at *6 (E.D. Pa. Aug. 20, 2003) ("the plaintiff must demonstrate the existence of sufficient facts to allow him to prove by a preponderance of the evidence that … discrimination exists that goes beyond the plaintiff's mere speculation.");  Warner v.

Montgomery Twnshp., No. 01-3309, 2002 WL 1623774, at *8 (E.D. Pa. July 22, 2002) (granting summary judgment because, except for plaintiff's "bare allegations," the record was devoid of any evidence that suggested that defendants discriminated against plaintiff).   Because Plaintiff has not pointed to any evidence to establish that he was terminated from his employment on the basis of his religion his claim of discrimination fails as a matter of law and must be dismissed.

### 3.     Even if Plaintiff could establish a prima facie case, Wells Fargo has articulated a legitimate, nondiscriminatory reason for its actions.

Even assuming, *arguendo*, that Plaintiff can establish a *prima facie* case of religious discrimination, Defendant has met its burden of articulating a legitimate, non-discriminatory reasons for its decision to terminate Plaintiff's employment.  McDonnell Douglas, 411 U.S. at 803.  "This burden is one of production, not persuasion."  Smith, 589 F.3d at 690.  Wells Fargo asserts that Plaintiff's termination from employment was a result of his violation of Wells Fargo's workplace conduct policy, in particular, for his insubordinate conduct on June 10, 2011. See Ex. B-15; Sergi Dep., Ex. E at 111:13-16, 112:1-6; Prymock Dep., Ex. F at 38:1-6.Thus, Wells Fargo has sustained its "relatively light" burden to "introduc[e] evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (citing Fuentes, 32 F.3d at 759).

### 4.     Plaintiff cannot establish that Wells Fargo's reasons for Plaintiff's termination are pretext for religious discrimination.

Plaintiff has not produced any evidence that Wells Fargo's termination of Plaintiff's employment was pretext for religious discrimination.  To establish pretext, Plaintiff must point to evidence that would allow a fact finder to 1) disbelieve the employer's articulated legitimate reasons; or 2) believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of the employer's action.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  A plaintiff must establish pretext through sufficient evidence of weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons such that a fact finder could find them "unworthy of credence."  Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998).   The court focuses on the legitimate, nondiscriminatory reason offered by the employer.  Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992).  "The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination."  Prise v. Alderwoods Group, Inc., 657 F. Supp. 2d 564, 596 (W.D. Pa. 2009) (citing Ezold, 983 F.2d at 527).

Plaintiff cannot satisfy his burden because he has not produced any evidence to support an inference that the Wells Fargo's reasons for its employment actions were a pretext for religious discrimination.  See Jackson v. Dana Corp., No. 98-5431, 1999 WL 1018241, at *7 (E.D. Pa. Nov. 9, 1999) (granting summary judgment to defendant where plaintiff "failed to present any evidence which either casts doubt on defendant's explanation for its actions, or even suggests, much less establishes, . . . discrimination was the cause of defendant's employment actions"); see also Simpson, 142 F.3d at 649.  Plaintiff has not offered a shred of evidence to show any weaknesses, implausibilities, incoherencies, or contradictions in Wells Fargo's proffered legitimate reasons for its action.

To the contrary, the record shows that Wells Fargo repeatedly and consistently addressed Plaintiff's unacceptable inappropriate workplace conduct.  As discussed above, both of Plaintiff's prior managers held Plaintiff accountable for his improper conduct.  See Ex. B-9, D-3. Additionally, Ms. DeStefanis testified that Plaintiff engaged in improper workplace behavior,

including arguing with her while she was his manager.  DeStefanis Dep., Ex. D at 44:19-22.  Similarly, Plaintiff argued with Mr. Sergi when Mr. Sergi asked Plaintiff merely to fulfill his job duties.  Sergi Dep., Ex. E at 109:1-7.  Indeed, the record is clear that Plaintiff disagreed with every corrective action he received from Wells Fargo and that Plaintiff believed his conduct was never improper.  See e.g., Pl.'s Dep., Ex. B at 128: 3-8; 131: 3-6; 142: 9-16; 144:4-16; 145:6-14; 153: 8-13, 15-16; 157:10-15; 164:21-24.

However, the law is clear that a plaintiff cannot meet his burden of establishing pretext by simply disagreeing with the defendant's actions.  See Angelico v. Agilent Tech., No. 06-348, 2006 WL 2854377, at *4, (E.D. Pa. Oct. 3, 2006) ("to demonstrate pretext, a plaintiff must do more than to show that the decisionmakers erred in discharging the plaintiff"); see also Parker v. Verizon Pennsylvania, 309 Fed. Appx. 551, 557 (3d Cir. 2009) (employee's mere denial that he did not engage in the conduct for which he was terminated was insufficient to establish pretext because such evidence created a material issue merely as to "whether the decision was wrong, not discriminatory"); Constant v. Mellon Financial Corp., 247 Fed. Appx. 332, 338 (3d Cir. 2007) (plaintiff's own assessment of her performance is inapposite to a pretext analysis because the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer's decision was wrong, mistaken, imprudent or incompetently made) (citing Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 529 (3d Cir. 1993) and Fuentes, 32 F.3d at 765).

Simply, Plaintiff has proffered absolutely no evidence that Wells Fargo held any discriminatory animus and no evidence to refute Wells Fargo's legitimate nondiscriminatory reason for Plaintiff's termination from employment.  Thus, Plaintiff cannot meet his burden to establish that Wells Fargo's articulated reason of insubordination is really a pretext for

discrimination based on his religion.   Accordingly, summary judgment should be entered in favor of Wells Fargo on Plaintiff's religious discrimination claims.

### C.   Plaintiff's Claims for Failure to Accommodate Should Be Dismissed.

To establish a prima facie case for failure to provide religious accommodation, a plaintiff must show that 1) he has a bona fide religious belief that conflicts with an employment requirement; 2) he informed the employer of this belief; and 3) he was disciplined for failure to comply with the conflicting employment requirement.   Protos v. Volkswagen of America, Inc., 797 F.2d 129, 133 (3d Cir. 1988).   If the plaintiff establishes a prima facie case, the employer can show that it did accommodate the employee's request or that it could not reasonably accommodate the employee without incurring undue hardship.   Id. at 134.   An employer is not required to accept any particular reasonable accommodation.   Ansonia Bd. of Educ. V. Philbrook, 479 U.S. 60, 67 (1986).   The employer satisfies its Title VII religious accommodation obligation when it offers any reasonable accommodation.   Id. at 68-69; see also Shelton v. Univ. of Med. & Denistry of N.J., 223 F.3d 220, 226 (3d Cir. 2000) (lateral transfer constituted reasonable accommodation).

For purposes of this Motion, Wells Fargo does not dispute that Plaintiff has a bona fide religious belief that conflicted with working after 6pm on Wednesday nights.   Further, Wells Fargo does not dispute that Plaintiff made a request for accommodation on June 2, 2011. However, Plaintiff cannot meet his burden to establish a prima facie case for failure to accommodate because Plaintiff has not shown, nor even alleged, that he was disciplined for failing to work after 6pm on Wednesdays.   In fact, Plaintiff's own testimony demonstrates that Plaintiff was never even required to work after 6pm on a Wednesday. Pl.'s Dep., Ex. B at 320: 2-4. Therefore, Plaintiff cannot meet his burden. See Fouche v. New Jersey Transit Corp., 2:09–

cv–03766, 2011 WL 2792450, at *3 (D.N.J. July 11, 2011) (plaintiff failed to establish a prima facie case of religious discrimination where the evidence demonstrated that plaintiff was not disciplined for observing his Sabbath).

Even assuming, *arguendo*, that Plaintiff could establish a prima facie case, summary judgment should be entered for Wells Fargo, because the Company provided Plaintiff with reasonable accommodation.  See Valdes v. New Jersey, No. 05-3510, 2007 WL 1657354, at *7 (D.N.J. June 6, 2007) (dismissing plaintiff's failure to accommodate claim on summary judgment where defendant provided a reasonable accommodation).  On June 2, 2011, Plaintiff contacted Wells Fargo's Human Resources Advisor line to request that he not be required to work after 6pm on Wednesdays and Mondays due to religious obligations.  Pl.'s Dep., Ex. B at 304:21-23; 305:1-4.  Wells Fargo granted Plaintiff's request on June 3, 2011.  Junnila Dep., Ex. G at 30:18-21.  Plaintiff testified at his deposition that he informed his manager, Phil Sergi, on June 4, 2011 that he had been granted a religious accommodation. Pl.'s Dep., Ex. B at 337:10-11.  Although Wells Fargo disputes that Plaintiff so informed Mr. Sergi on June 4, 2011, there is no dispute that Plaintiff was never required to work after 6pm on Wednesdays.  In fact, it is undisputed that call nights were moved to Tuesday nights and continue to be held on Tuesday nights to the present. Sergi's Dep., Ex. E at 108:13-18.  Accordingly, Plaintiff's failure to accommodate claim should be dismissed.

### D.   **Plaintiff's Claims for Retaliation Should Be Dismissed Because Plaintiff Cannot Show That Wells Fargo's Legitimate Business Reasons Are Pretext For Discrimination.**

Plaintiff claims that Wells Fargo retaliated against him because he made a request for a religious accommodation.  First Am. Compl. at ¶ 25; Pl.'s Dep., Ex. B at 46:19-22 (Plaintiff believed Mr. Sergi no longer "wanted [Plaintiff] on his team").  This claim likewise fails as a matter of law.  To establish a *prima facie* claim of retaliation, a plaintiff must show: (1) that he

engaged in protected activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected conduct; and (3) a causal connection between the employee's protected activity and the employer's adverse action. See Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (citations omitted). If a plaintiff establishes a prima facie case, the burden shifts to the employer to produce a non-retaliatory reason for the adverse employment action. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997), cert. denied, 522 U.S. 914 (1997). "The [employer's] burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for [its action]; the defendant need not prove that the articulated reason actually motivated" the action. Id. If an employer satisfies its burden, the plaintiff must then show pretext. Id.

Even assuming, arguendo, that Plaintiff can establish a prima facie case of retaliation, his claim fails because he has no evidence to demonstrate that Wells Fargo's reason for terminating his employment, i.e., Plaintiff's insubordinate conduct, was pretext for retaliation. As discussed above, the record shows that Plaintiff had a history of inappropriate workplace conduct that predated Mr. Sergi becoming his manager; that Plaintiff disagreed with the corrective actions and criticisms of his conduct from prior managers; and that Plaintiff failed to correct his conduct.

To establish pretext, a plaintiff must provide either direct or circumstantial evidence from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that a discriminatory reason was more likely than not a motivating cause of the employer's action. Id.; see also Fuentes v. Perske, 32 F.3d 759, 763-64 (3d Cir. 1994). In "order to survive summary judgment, the plaintiff must show through admissible evidence that the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason." Merriweather v. Philadelphia Federation of

Teachers Health & Welfare Fund, 2001 WL 1402036, at *4 (E.D. Pa. Nov. 7, 2001).  The
ultimate burden of persuasion remains with a plaintiff at all times.  See Barber v. CSX Distrib.
Servs, 68 F.3d 694, 698 (3d Cir. 1995).

In support of his claim of retaliation, Plaintiff offered only vague, unsupported
allegations that Mr. Sergi harassed him after Plaintiff made his request for accommodation.  See
Pl.'s Dep., Ex. B at 326:24; 327:1 (Plaintiff alleged that he was "harassed about a whole bunch
of things.").  In essence, the examples of alleged retaliatory conduct enumerated in Plaintiff's
email to Ms. Junnila and in Plaintiff's deposition testimony, amount to nothing more than
complaints that Mr. Sergi:  1) required Plaintiff to fulfill his job duties; 2) required Plaintiff
conduct personal business on his own time; and 2) asked Plaintiff what Plaintiff was working on
during work hours.  As Ms. Junnila noted in her response to this email, Mr. Sergi's actions were
within the scope of his duties and responsibilities as Plaintiff's manager.  See Ex. B-17.  Plaintiff
did not attempt to explain, because he cannot, how Mr. Sergi's requirements that Plaintiff
perform his job and conduct his personal business on his own personal time constitute retaliation.
Plaintiff has offered no evidence to ascribe a retaliatory motive to Mr. Sergi's actions.

When pressed for specifics of conduct he considered retaliatory, Plaintiff testified that on
June 4, 2011 he wore a Wells Fargo "tee shirt" to work and that Mr. Sergi informed him that he
was not dressed appropriately.  Pl.'s Dep., Ex. B at 309: 19-20, 23-24.  Plaintiff testified, "I felt
this was – he was, you know, retaliating against me."  Pl.'s Dep., Ex. B at 314: 9-11.  However,
Plaintiff admitted that Mr. Sergi took no action against him regarding his attire.  In fact, Mr.
Sergi explicitly declined to take any action against Plaintiff because Mr. Sergi had not previously
discussed the expectations of the dress code with Plaintiff.  Pl.'s Dep., Ex. B at 314:12-17.
Plaintiff then testified about a situation where he asked Mr. Sergi if he could pay his respects to a

manager of another bank whose family member had recently died.  Pl.'s Dep., Ex. B at Dep. 328: 17-24, 329:1-4.  Mr. Sergi informed Plaintiff that he could do so on his lunch hour.  Id.  Finally, Plaintiff testified that Mr. Sergi "constantly" asked Plaintiff questions such as, "who are you on the phone with?" "What are you doing? Where are you going? How are you doing it?"  Pl.'s Dep., Ex. B at 341: 7-15.

Plaintiff further alleged that he contacted Lorie Junnila in Wells Fargo's human resources to report this alleged retaliatory conduct.  Pl.'s Dep., Ex. B at 351:10-14; see also Ex. B-17.  In his email to Ms. Junnila, Plaintiff raised additional complaints regarding Mr. Sergi's behavior. First, Plaintiff complained that on June 10, 2011, while working in the store, Plaintiff became cold and put his windbreaker on. Ex. B-17.  Mr. Sergi asked him to take the windbreaker off because it was not appropriate dress.  Id.  In response, Plaintiff told Mr. Sergi that he wanted to go home to change.  Mr. Sergi stated that Plaintiff could use his lunchtime to do so.  See Ex. B-17.  Second, Plaintiff complained that, while Plaintiff was writing the email, Mr. Sergi asked Plaintiff whether he was performing sales related work.  Id.  When Plaintiff did not respond to Mr. Sergi's question, Mr. Sergi stated that, as Plaintiff's manager, Mr. Sergi wanted to know what Plaintiff was doing. Id.

Plaintiff attempted to support his assertion that Mr. Sergi's actions were retaliatory by arguing that Mr. Sergi's behavior towards him changed after Plaintiff's accommodation request. Specifically, Plaintiff testified, "I felt like I was being retaliated against, because this wasn't being done before.  The tee shirt thing wasn't being done before."  Pl.'s Dep., Ex. B at 331: 17-19.  Plaintiff's argument is based on nothing more than pure speculation.  The record shows that Plaintiff had limited experience working with Mr. Sergi.  Pl.'s Dep., Ex. B at 297:19-21 ("June 1st was the first Wednesday in which I worked with Phil Sergi."); Pl.'s Dep. Ex. B at 309:20-22

("But again [June 4th] was the first Saturday that Phil was working with us as a manager."). Indeed, Plaintiff has no evidence that Mr. Sergi observed Plaintiff wearing a Wells Fargo tee shirt at work prior to his requested accommodation.  Moreover, Plaintiff's belief that Mr. Sergi held a retaliatory motive is undermined by the fact that Mr. Sergi changed call nights after learning of Plaintiff's request.

Plaintiff refused to believe that his conduct had ever been inappropriate and therefore, assumed that his termination must have been retaliatory because it happened subsequent to his request.  However, as discussed above, to discredit Defendant's proffered reasons, Plaintiff cannot simply show that Defendant's decision was wrong or mistaken; a court must not second guess an employer's decision as long as it was not discriminatory.  See Robinson v. Matthews Intern. Corp., 368 Fed. Appx. 301, 305 (3d Cir. 2010).  Plaintiff cannot establish pretext by asking the Court to sit as a "super-personnel department," second-guessing his employer's employment decisions.  Keller v. Orix Credit Alliance, Inc., 130 F. 3d 1101, 1109 (3d Cir. 1997); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988) ("[O]ur inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee."); Logue v. International Rehabilitation Associates, Inc., 837 F.2d 150, 155 n. 5 (3d Cir. 1988) (stating that the Court does not "assess the overall fairness of [the] … employer's actions.").

In short, Plaintiff has not offered a shred of evidence to show any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Wells Fargo's proffered legitimate reasons for its actions such that a factfinder could disbelieve those reasons or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Plaintiff's termination.  See Fullman v. Potter, 480 F. Supp. 2d 782, 793-94 (E.D. Pa.

2007 (Robreno, J.) (granting summary judgment where plaintiff lacked evidence that the employer's reason for termination was weak or unworthy of credence). To the contrary, the undisputed facts demonstrate that Plaintiff was terminated based on the same type of insubordinate conduct for which he had received disciplinary action from other managers. Accordingly, summary judgment should be entered in favor of Wells Fargo on Plaintiff's retaliation claim.

### E.   Plaintiff's Has No Evidence To Support His Claim For Punitive Damages.

To recover punitive damages under Title VII[13], a plaintiff must show that the defendant engaged in discriminatory practices "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Kolstad v. American Dental Association, 527 U.S. 526 (1999); 42 U.S.C. §1981a(b)(1).   Malice or reckless indifference is shown when the employer knowingly violates federal law.  Kolstad, 527 U.S. at 535.  In Kolstad, the Supreme Court concluded an employer may not be held vicariously liable for punitive damages for the discriminatory actions of its managers when those decisions are contrary to an employer's good-faith efforts to comply with Title VII.  Id. at 545.

Here, it is undisputed that Wells Fargo has adopted and disseminated a company-wide policy prohibiting unlawful discrimination of any kind, including unlawful harassment and retaliation.  Declaration of Lorie Junnila, attached as Exhibit C at ¶ 4.  Furthermore, Wells Fargo's managers are required to complete an annual training certification in various areas, including anti-discrimination and anti-harassment and applicable Wells Fargo policies and procedures.  Junnila Decl., Ex. C at ¶ 5.  There is no evidence of malice or reckless indifference by Wells Fargo to the rights of Plaintiff, and, therefore, Plaintiff's claim for punitive damages

---

[13] It is well settled that punitive damages are not available under the PHRA.  See Hoy v. Angelone, 720 A.2d 745 (Pa. 1998).

should be dismissed.   See Ridley v. Costco Wholesale Corp., No. 2:04-cv-3860, 2005 WL 2562726, at *5 (E.D. Pa. Oct. 12, 2005) (dismissing plaintiff's claim for punitive damages on defendant's motion to dismiss where defendant had had an anti-discrimination policy and made a good-faith effort to implement and enforce it).

## IV.   CONCLUSION

For all of the foregoing reasons, summary judgment should be entered in favor of Wells Fargo and against Plaintiff on all counts of the Complaint.

Respectfully Submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PC.


/s/ Julie A. Donahue
Paul Lancaster Adams (I.D. No. 72222)
Julie A. Donahue (I.D. No. 203347)
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2800
Attorneys for Defendant
Date: September 14, 2012                Wells Fargo Bank, N.A.

## <u>CERTIFICATE OF SERVICE</u>

I, Julie A. Donahue, do hereby certify that on this date a true and correct copy of the foregoing Motion of Defendant Wells Fargo Bank, N.A. for Summary Judgment, along with the supporting memorandum of law, was filed electronically and is available for viewing and downloading from the ECF system.

Dated:  September 14, 2012          */s/Julie A. Donahue*                          
                                    Julie A. Donahue